UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


DEMARIOL DONTAYE BOYKIN,

       Petitioner,

v.                                                  Case No. 2:13-cv-73
                                                       HON. ROBERT HOLMES BELL

CATHERINE S. BAUMAN,

       Respondent.
_____/


### REPORT AND RECOMMENDATION

       Petitioner Demariol Dontaye Boykin filed this petition for writ of habeas corpus, challenging his jury conviction for first degree murder and felony firearm. Petitioner was sentenced to life without parole for his murder conviction and fifteen years for his felony firearm conviction. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision.

       The Michigan Court of Appeals summarized the facts of this case:

> First, defendant's thought processes were undisturbed by hot blood. The victim, Shawn Broyles, and defendant's brother Marvin were engaged in a fist-fight. Broyles' two friends were present, but did not think the fight was serious enough to merit their involvement. Defendant, his father, and defendant's brother Charles were present. Neither defendant's father nor Charles thought the fight was serious enough to merit their intervention either. At no time did Broyles attack or threaten to attack defendant. In fact, Broyles had already begun running from the scene of the altercation when defendant started shooting at him.
>
> Second, defendant had time in which to consider his actions. Broyles pleaded with defendant to "Come on, stop," presumably after he saw the gun in defendant's hand. Defendant, however, did not stop.

> Broyles turned and ran from defendant. Defendant raised his gun and fired three to four shots at Broyles. Broyles fell after being shot twice. One witness testified that defendant lifted Broyles up by his jacket hood, put the gun to his cheek, and pulled the trigger, but the gun did not fire. The gun, found by Broyles' cousin, was determined to be jammed. After attempting to shoot Broyles again, defendant and his two brothers kicked Broyles as he lay dying on the sidewalk. Defendant's brother Marvin testified that defendant said he shot Broyles because Broyles had jumped him a few years before.

ECF No. 26.

Petitioner alleges that:

I. Tainted evidence was admitted for trial purposes.

II. Testimony was inconsistent and confusing for the jury to hear.

III. Prosecution witnesses used intimidation tactics on another witness, which made the testimony highly unreliable for the jury.

IV. Prosecutor witness Keyon Pegues committed perjury. Mr. Pegues testified to having no knowledge of the identity of the person who took something from the victim.

V. Petitioner was denied a fair trial when the trial court allowed testimony from Elizabeth Jele, who testified that she committed perjury during prior testimony. Ms. Jele's testimony is very unreliable and by self admittance of perjury, she should not have been used as a witness.

VI. Petitioner was denied due process by the trial court's instruction to the jury that inferred elements of the crime.

VII. Petitioner was denied due process under both the State and the Federal Constitution where the trial court refused to give a requested instruction on manslaughter.

VIII. Petitioner was denied a fair trial where the prosecutor repeatedly committed misconduct by calling the defendant a "liar," arguing that trial counsel was trying to mislead the jury as well as degrading counsel, and arguing facts not in evidence. The cumulative effect of these errors requires reversal of Defendant's convictions.

>   IX. Petitioner was denied the right to effective assistance of counsel under the Sixth Amendment under both the State and the Federal Constitution when counsel failed to object to the prosecutor's closing arguments.
>
>   X. The defendant received ineffective assistance of counsel on appeal when counsel failed to raise the issues outlined in defendant's motion for relief from judgment.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite

to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner first raised the issues presented in this petition in a motion for relief from judgment. The trial court denied the motion under MCR 6.508(D). Both the Michigan Court of Appeals and the Michigan Supreme Court denied Petitioner's appeal under MCR. 6.508(D). Respondent argues that Petitioner procedurally defaulted these issues. Respondent argues that the trial court denied the motion for relief from judgment under MCR 6.508(D)(3). However, the court never cited that rule. The trial court did state: "This Court cannot grant the relief sought if the arguments made in the present motion could have been raised on appeal absent a showing of good cause. MCR § 5.508(D). To the extent Defendant's arguments have not been raised on appeal, Defendant does not make a good cause showing as to his failure to present these arguments on appeal."

The doctrine of procedural default is applicable where a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). To determine whether Petitioner has been denied relief based on a procedural default, we look to the last "reasoned judgment rejecting the [federal] claim." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). The doctrine is applicable if "the last state court to review [the prisoner's] conviction 'clearly and expressly' relied on [the prisoner's] procedural default in its decision affirming Petitioner's conviction." *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).

In *Guilmette v. Howes*, 624 F.3d 286, 289-90 (6th Cir. 2010), the Sixth Circuit, in an *en banc* decision, held that brief form orders by the Michigan appellate courts invoking MICH. CT. R. 6.508(D) are unexplained orders within the meaning of *Ylst*, 501 U.S. at 803. Such form orders are presumed to uphold or reject the last reasoned decision below. *Guilmette*, 624 F.3d at 291-92 (citing *Ylst*, 501 U.S. at 803). As a result, absent an explained decision from a lower Michigan court

- 6 -

applying the procedural prohibition of Rule 6.508(D), the federal court may not invoke procedural default to dispose of a habeas claim that has been rejected by the Michigan courts on the grounds of MCR 6.508(D). *See also McClellan v. Rapelje*, No.11-1841, 2013 WL 135362, at *4 (6th Cir. Jan. 11, 2013) (holding that a lower court decision that explicitly denies relief under an established state procedural rule overcomes the presumption set forth in *Werth v. Bell*, 692 F.3d 486, 493 (6th Cir. 2012) (holding that "an unexplained summary order [of a state appellate court] is an adjudication on the merits for AEDPA purposes)).

       Although, Respondent asserts that the motion was denied under MCR 6.508(D)(3), the order denying the motion cites only MCR 5.508(D) and MCR 6.508(D)(2). ECF No. 19, order dated October 7, 2011. It appears that the court mistakenly cited to MCR 5.508(D) and intended to cite to MCR 6.508(D)(3). The trial court did clearly apply the procedural rule requiring Petitioner to present his claims in his appeal of right, and denied the motion for relief from judgment because Petitioner could not show good cause for his failure to do so. MCR. 6.508(D)(3). The trial court clearly held that Petitioner's failure to present these issues in his appeal of right was a procedural default and refused to review the claims because Petitioner failed to show good cause for his default of these issues.

       Petitioner argues that the trial court erred in admitting the gun into evidence because it was not found by police officers. Petitioner also contends that the trial court erred in admitting the testimony of Elizabeth Jele into evidence because she had admitted to committing perjury. Petitioner further states that the testimony of witnesses Ben Adams and Keyon Pegues was perjured testimony and that these witnesses altered their original testimony. Petitioner states that the inconsistency in the testimony of Adams and Pegues was confusing for the jury. Petitioner has failed to show that perjured testimony was presented during his trial. Further, the admission of evidence generally "is

- 7 -

no part of a federal court's habeas review of a state conviction." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). In *Estelle v. McGuire*, the Supreme Court addressed the issue of whether the admission of evidence in violation of California state law entitled a petitioner to habeas corpus relief.

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); see also *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam).

*Estelle v. McGuire*, 502 U.S. at 67-8.

The appropriate inquiry is whether the allegedly improper admission of evidence violated the petitioner's constitutional rights. *Estelle v. McGuire*, 502 U.S. at 68. A federal court will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the denial of fundamental fairness, and therefore, a violation of due process. *Brown, III v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).

> "The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)).

*Brown, III v. O'Dea*, 187 F.3d at 578. In the opinion of the undersigned, the evidence was not improperly admitted. The jury was free to consider what weight to give to the evidence presented. Petitioner has failed to show either cause or prejudice to overcome his procedural default of these issues.

Petitioner claims that witness Elizabeth Jele was intimidated and told not to talk to the police by witnesses Ben Adams and Keyon Pegues. However, Petitioner has not shown that witness Jele was intimidated by the prosecution or the police to testify in any manner. Witness Jele testified at Petitioner's trial that Petitioner's brother Marvin told her to lie when she testified in Marvin's preliminary examination. ECF No.12 at 89 and 109. Witness Jele, conceded that she lied in her testimony at Marvin's preliminary examination. *Id.* at 90. Petitioner has not shown that witness Jele gave false testimony during his trial or that the prosecution induced false or perjured testimony against Petitioner. In the opinion of the undersigned, the admission of witness Jele's testimony did not violate Petitioner's constitutional rights.

Petitioner argues that it was error for the court to instruct the jury that an inference could be made that Petitioner intended to kill by using a gun and by failing to instruct the jury on the lessor included offense of involuntary manslaughter. Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review. Instead, Petitioner must show that the erroneous instruction "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). *See also Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due process of law"); *Rashad v. Lafler*, No. 09-2371, slip op. at 7 (6th Cir. Apr. 5, 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law. *Id.*

Petitioner argues that it was improper for the trial court to instruct the jury that an inference that Petitioner intended to kill could arise from his use of a gun. The court instructed the jury:

- 9 -

> Now the defendant's intent may be proved by what he said, what he did, how he did it, or by any other facts and circumstances in evidence.
>
> You must think about all the evidence in deciding what the defendant's state of mind was at the time of the alleged killing. The defendant's state of mind may be inferred from the kind of weapon used, the type of wound inflicted, the acts and words of the defendant, and any other circumstance surrounding the alleged killing. You may infer that the defendant intended to kill if he used a dangerous weapon in a way that was likely to cause death. Likewise, you may infer that the defendant intended the usual results that follow from the use of a dangerous weapon.
>
> A dangerous weapon is any instrument that is used in a way that is likely to cause serious physical injury or death.

ECF No. 15 at 118.

A jury instruction may not create a mandatory presumption that relieves the prosecution of the burden of establishing each element of a crime beyond reasonable doubt. *Francis v. Franklin*, 471 U.S. 307, 313 (1985). An instruction that merely allows a permissive inference does not violate a petitioner's Constitutional rights. *Id.* at 314. "A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." *Id.* In this case, the court instructed the jury that the jurors "may infer" an intention to kill from the use of a dangerous weapon. The court's instruction allowed a permissive inference which did not violate Petitioner's Constitutional rights.

Similarly, Petitioner cannot show that the trial court's denial of his request for a manslaughter instruction violated his Constitutional rights. The court instructed the jury on the elements of first degree murder, second degree murder, and self defense. The court decided that the

facts in this case did not justify a manslaughter instruction because Petitioner exercised judgment before committing the acts. ECF No. 15 at 52-53.

In *Beck v. Alabama*, 447 U.S. 625 (1980), the Supreme Court held that a death sentence was unconstitutional where the jury was never instructed on a lesser included offense noncapital offense where the evidence supported such a verdict. The Court concluded:

> While we have never held that a defendant is entitled to a lesser included offense instruction as a matter of due process, the nearly universal acceptance of the rule in both state and federal courts establishes the value to the defendant of this procedural safeguard. That safeguard would seem to be especially important in a case such as this. For when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense - - but leaves some doubt with respect to an element that would justify conviction of a capital offense - - the failure to give the jury the "third option" of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction.
>
> Such a risk cannot be tolerated in a case in which the defendant's life is at stake. As we have often stated there is a significant constitutional difference between the death penalty and lesser punishments.

*Id.* at 637. The Supreme Court left open the question whether the Due Process Clause is violated when a lesser included offense is omitted from jury consideration in a noncapital case. *Id.* at 638 n. 14. The Sixth Circuit has held that the failure to instruct on a lessor included offense in a noncapital case is not "such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990); see also *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002). Accordingly, Petitioner cannot show that the denial of a manslaughter instruction violated his Constitutional rights.

Petitioner claims that the prosecutor committed misconduct during opening and closing arguments by asserting that Petitioner was a liar, that defense counsel was trying to mislead the jury, by degrading defense counsel, and by arguing facts not in evidence. Misconduct by a prosecutor can rise to the level of a due process violation. *Lundy v. Campbell*, 888 F.2d 467, 474 (6th Cir. 1989). However, before habeas corpus relief becomes available, the misconduct must be so egregious as to deny petitioner a fundamentally fair trial. *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir.1993). The habeas court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). In addition, the court may view any misconduct in light of the strength of the competent proofs tending to establish guilt. *See Angel v. Overburg*, 682 F.2d 605, 608 (6th Cir. 1982) (*en banc*). "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor.'" *Serra*, 4 F.3d at 1355 (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).

In the opinion of the undersigned, Petitioner has not shown that the prosecutor made improper arguments during trial. "A prosecutor is permitted a certain degree of latitude in summation." *United States v Barker*, 553 F.2d 1013, 1025 (6th Cir. 1977). The scope of review in a habeas corpus action of prosecutorial misconduct is narrow. A petitioner must do more than show erroneous conduct. "The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. De Christoforo*, 416 U.S. 637, 643 (1974)). The habeas court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the

claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). In addition, the court may view any misconduct in light of the strength of the competent proofs tending to establish guilt. *See Angel v. Overburg*, 682 F.2d 605, 608 (6th Cir. 1982) (*en banc*). "The touchstone of due-process analysis is the fairness of the trial, not the culpability of the prosecutor." *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)), *cert. denied*, 114 S. Ct. 1317 (1994). Consequently, the giving of cautionary instructions is relevant to determining whether fundamental fairness was denied. *Id.* at 1356.

In the opinion of the undersigned, the prosecutor did not commit misconduct during his opening and closing statements to the jury. The prosecutor made proper arguments based upon the evidence presented in the case. Moreover, the trial court properly instructed the jury that attorney argument is not evidence and the it was jurors' responsibility to give weight to the evidence presented. ECF No. 15 at 108. Petitioner fails to overcome his procedural default of this issue by showing cause and prejudice.

Petitioner asserts that his trial counsel was ineffective for failing to object to prosecutorial misconduct during opening and closing arguments. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption

that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. In the opinion of the undersigned, Petitioner cannot show that counsel erred by not objecting to the prosecutor's arguments. As previously stated, Petitioner cannot show prosecutorial misconduct. Petitioner has failed to show cause or prejudice for his procedural default of this issue.

Petitioner asserts that his appellate counsel erred by failing to appeal the issues being asserted in this petition in Petitioner's direct appeal. An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate

that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* In the opinion of the undersigned, Petitioner has failed to show ineffective assistance of appellate counsel.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

The undersigned recommends that the court deny Petitioner's application on procedural grounds of default. Under *Slack*, 529 U.S. at 484, when a habeas petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Both showings must be made to warrant the grant of a certificate. *Id.* The undersigned concludes that reasonable jurists could not debate that each of

Petitioner's claims are properly dismissed because of his procedural default. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ TIMOTHY P. GREELEY
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: March 4, 2016